## METAL STAMPING COMPANY OF GREENVILLE, Inc.,
### v.
## GENERAL MANUFACTURING COMPANY and G. E. Hilger.
### Civ. No. 6663.

United States District Court
N. D. Texas, Dallas Division.
March 2, 1957.

J. V. Martin, Houston, Tex., and Joseph H. Schley, Dallas, Tex., and Ralph Bailey, Jr., Greenville, S. C., for plaintiff.

Cecil L. Wood, Fort Worth, Tex., for defendants Clair E. Hilgers and Barbematic, Inc.

Charles Marcus, Dallas, Tex., for defendants General Mfg. Co. and Philip H. Dill, Inc.

ATWELL, District Judge.

In this suit the plaintiff seeks an injunction, judgment for $100,000 damages, and a decree announcing infringement.

The Wilson Patent, which is the property now of the plaintiff here, was issued on November 8, 1955, and is numbered 2,722,882. In the preparatory statement of the patent it is observed that "While electric barbecue machines are generally well known there has always been a problem of constructing the oven in such a way as to conserve fuel and provide visibility and ready access to the oven for removing the meat and for cleaning the oven. Such devices have heretofore been very complicated from a mechanical standpoint and have been capable of accommodating relatively small amounts of meat. Devices for holding the meat have been awkward in that either there was a tendency for the meat to turn as the spits revolved or the spits would accommodate only meat of a particular size and shape. Attempts to provide flavoring means have met with only limited success because of the awkward positioning of the various parts of the machine.

"Accordingly it is an object of this invention to provide a novel barbecue machine which will facilitate performance of the barbecuing operation efficiently, expeditiously and automatically and which is designed to facilitate cleaning of the interior of the machine.

"Another object of this invention is the provision of a motor-driven barbecue machine in which the meat is continuously rotated in such a manner that it will be slowly self-basted in its own natural juices, thereby materially reducing shrinkage of the meat.

"Another object of this invention resides in the particular construction of means for supporting and rotating the meat while in the oven, so arranged that the supporting means may be easily and conveniently withdrawn from the oven for the purpose of placing the meat thereon or removing the meat therefrom.

"Another object of this invention is the provision of a spit and a spit-supporting arrangement whereby meats of many types, sizes, and in greater quantity may be easily accommodated in the apparatus.

"It is another object of this invention to provide a barbecue machine having a substantially airtight, insulated, electrically heated oven so that there will be a minimum of heat loss thus making it possible to conserve fuel and eliminate the smoke and fumes normally resulting from a barbecueing operation and make it possible to introduce wood smoke into the oven as a means for flavoring the meat.

"Still another object of this invention is to provide a barbecue machine having an oven in which the meat holding means is located below the heating means so that drippings from the meat will not fall thereon.

"Yet another object of this invention is the provision of a barbecue machine having a substantially airtight oven having means both on the front and rear thereof for gaining access thereto and for observing the meat during the cooking thereof and in which means are provided for collecting drippings from the meat in the bottom of the oven."

Then follow his claims after a further description, and he makes a number of claims which I believe to be unnecessary to go over except to say that his claims, which were allowed by the patent office, have been substantially and surprisingly well accomplished in the machines which have been offered in evidence here in Court. The oral testimony as well as the exhibits which have been

offered, I also find as a fact, support the contention that whatever may have theretofore taken place in the barbecuing industry does not and did not include the particular claims upon which this patent was granted, and I hold that the rule of law which is to the effect that the patent must be sustained if it shows that that particular point was before the Patent Office at the time the patent was granted and that if and when the other patents were cited or other publications were cited or other uses were cited as references in the Patent Office and disclosed by the file wrapper that such findings are somewhat italicized as having been under the scrutiny of the Patent Office and allowed. The two patents which have been cited here by the defendants as anticipating the plaintiff's patent, the plaintiff Wilson's patent, were cited to the Patent Office, and it was concluded there, and I think the conclusion was wise and correct, that they did not anticipate or furnish the information to the public that the Wilson Patent ultimately and finally did furnish.

I also find as facts that the patentee and the present owner have made the patent available to the public, and in 1955, the sales amounted to the sum of $400,000 and that in 1956 they amounted to $1,500,000, and that such offerings for the public's use and consumption were not only made in the United States but in Canada and in adjacent islands of the sea.

I also find that notices of infringement were given, as the statute requires, 35 U.S.C.A. § 287, by the plaintiff to the defendants.

I also find as facts that the defendants' infringement, and that has been conceded by the defendants, does not seem to have interfered with the plaintiff's business, and that the plaintiff, owner of the Wilson Patent, is not entitled to any damages; but I hold as a conclusion of law that the defendants shall be enjoined from making the machine or machines which it is now making and which it is putting on the market.